Good morning, Your Honors. Good morning. Jeffrey Jones for the appellant, Anthony Lozano. This case presents a complicated interplay between California law and the federal constitution. The state court made a state law ruling, applying the secondary felony murder rule and the merger doctrine. Why don't you try to keep your voice up. Yes, sir. And project it a little. Okay, I'll try to do that. So the state court made a state court ruling that was based on a fact and factual error that constitutes an unreasonable determination of the facts within the meaning of the statute. And that state law ruling resulted in the offense, the predicate offense for felony murder not merging. And therefore, the jury was allowed to convict Mr. Alonzo without finding beyond a reasonable doubt the mental state required for murder. And that factual mistake by the California court of appeal is that there was no separate purpose for the predicate offense of grossly discharging a firearm and the homicide. And that's the reason why the state court ruled that Mr. Alonzo had a separate purpose. Are you bringing a challenge under D-1 or D-2 or both? Both, Your Honor. Both. So what is the factual error? That Mr. Alonzo had a separate purpose between the predicate offense of discharging a weapon and the homicide, a separate collateral purpose, yes. But didn't the Petitioner himself testify that he intended to frighten and not kill? Yes, he did. Is that a collateral purpose? I don't believe so. He said he intended to frighten. And the jury found he didn't intend to kill. But all that's required in that analysis is that he had an intent to batter. And the facts here showed that he admitted that he knew that he fired a weapon at a blazer, the black blazer, and he thought two people were inside the blazer. And that's those facts are unrefuted. The prosecutor's theory of the case that there was an intent to kill and that the murder was premeditated and deliberated. Well, if there are two people in the blazer and he fired, what, four rounds? Three rounds. Three rounds. And he killed somebody and wounded somebody else. The other person wasn't hurt. Why is that such a big surprise? I don't think that's a huge surprise. But I think he had the Mr. Alonzo had the intent to batter. That's the factual point, that when he fired the weapon, there was an intent to batter, which is what the State law analysis turns on. State intent to batter. Yes, sir. You mean just to wound him, huh? Or to cause physical contact, I suppose, would be a battery. Well, he could have shot at the trunk. Yeah. Yeah. Shot at the truck, knowing two men were inside. Did he shoot at the trunk? Sir? Did he shoot at the trunk? At the truck, did you say? Trunk. Trunk. The trunk. No, I believe he shot. He testified, there was no testimony about a trunk, but he shot at the blazer. And actually, it was all the bullets were at chest to head level for a grown man. So it was at the, you know, they were all, the shots were all on him. He had a rifle, right? He had a rifle. Yeah. OK. That's right. All right. OK. And so that factual error, which is, please, I'm sorry if I continued before. No, I was. Just letting you continue. So that factual error that I think is an unreasonable determination of the facts, or it could also be viewed as an error sufficient to overcome the presumption of correctness for a State court fact-finding. And that resulted in an unreasonable application of In re Winship and the long line of Supreme Court cases holding that Mr. Alonzo was entitled to be, for the prosecution to prove every element of the defense. Are you talking about an unreasonable application of the facts within federal law, or are you talking about a factual error under the evidence, which would be a question of State law? Well, I'm talking about both, Your Honor. A factual error, yes. And the factual error that I discussed removed, operated, that factual error was the basis for removing an element of the offense of murder from the jury's consideration. And that result violates that line of Supreme Court cases. Is your argument that it has to be an intent to assault? Under California law, isn't an intent to frighten sufficient to constitute a collateral purpose? Well, if one looks at the no, Your Honor, no. If one looks at the Robertson case, which the court of appeal relied on, there the defendant had testified that he had the intent to frighten. But he fired the shots. In that case, he fired the shots in the air. He didn't fire them at human beings. And then he also fired shots that hit the people, but it was the shots fired in the air. Right. Well, the question is, what constitutes a sufficient collateral purpose under California State law? And in Robertson, the defendant fired shots in the air intending to frighten men who were trying to burglarize his vehicle, if I recall the fact pattern correctly. And there the California Supreme the California court held that that intent to frighten is a sufficient collateral purpose. In this case, the Petitioner said he intended to frighten. So I don't see why that's not a sufficient collateral purpose under California law. Robertson was intent to frighten. It was just the intent to frighten. In other words, there was no one can have multiple intents. There was no intent to batter in that case. And in this case, under the facts, there was an intent. I think there's indisputably an intent to batter. And the difference being in Robertson, the defendant didn't didn't the evidence show that he didn't that he didn't fire at a human being. I see how that helps you under Federal law. Well, if it's a factual error. If if if the court accepts the premise that that was an unreasonable determination of the facts, that it survives the the presumption of correctness, if if you if you accept that premise, then it I think it very clearly violates Federal law under the long line of Supreme Court cases that I mentioned that I've cited in the briefs. But he has the Federal right to have the jury decide every element of the offense. And that didn't happen here. Okay. All right. We have your argument well in hand. Thank you. May it please the Court. Daniel Rogers, Deputy Attorney General for Respondent and Appellee in this matter. I'd like to begin by clarifying a factual point that I think will make it clear that this case is Robertson. And that factual point is this. And I would refer the Court to page 19 of the appellant's excerpts of record, which is the first page of the California Court of Appeal opinion. And in their excerpts, the Court notes that the two victims in the case got out of the car and walked away from the car. They were not, this is not a case of firing at an occupied vehicle. It is a case of firing at an unoccupied vehicle. So they were outside of the car, and the appellant fired the shots. He intended to frighten them. He did not aim the rifle at them. And he was found guilty of firing at the unoccupied vehicle. In Robertson, he fired into the air, not at the victims, into the air. In this case, he fired not at the victims. He fired at the car, according to his statements to police and his trial testimony. And he hit the victim. So you clearly have this collateral purpose. This is not, by his own admission, his own statements to the police and his own trial testimony, this was not the assaultive-type crime that counsel for appellant indicates. This is clearly a case in which he was attempting to execute this other purpose, if you will, this collateral purpose, as Robertson calls it. And in the process, struck and killed one of these two people in California at the time this case was decided. Consequently, California Court of Appeal did not act unreasonably in determining that any error in instructing that the assault with a firearm, which would merge under the Ireland law. Kagan. Let me ask you this, counsel, because the Petitioner is bringing, he says, both a D-2 and a D-1 challenge. And because Robertson was the law in California at the time, it's very difficult to say that there was no – that there was an error in determining that there was a collateral purpose. And in terms of whether it's an unreasonable application of Federal law, the felony murder rule is – that's a State law. Correct. So because of AEDPA, I think we're very constrained in how we can look at the California Court's decision in this case. But nevertheless, Chun is now the law of the land in California. So what remedies are available to a Petitioner such as this when the law has changed in a way that, had it been retroactive or had it been the law at the time that he was sentenced, he would have gotten the benefit of that? Is there anything that he can do? Any avenues of relief remaining? Well, I think that the possibility of filing a petition for writ of habeas corpus in the California Supreme Court is available. He filed a petition, and – So he can still go back to State court at this point? I think that, given the intervening change in the law, that would allow him to evade California's general rule against successive petitions. I thought the district court State proceedings to let him exhaust the felony murder issue, and he went to the Supreme Court and it denied. Now, I haven't looked at the habeas petition that was filed, but I do know some dates that are important. The habeas petition, and I believe the order denying the habeas petition is in our supplemental excerpts of record. I can't give you a page site right now, but I believe that's where it's located. And it indicates that the habeas petition was filed on March 30th, 2009. So it looks to me, just from the dates, that perhaps that petition was filed prior to Chun. If that's the case, then I would expect that the Petitioner would be able to return to the California Supreme Court, explain that – Your Honor is shaking your head. Is it prior to that date? I know. I'm trying to – I'm a little confused as to the dates. But I thought that he had already cited Chun to the Supreme Court. And I don't – it may have been pending at the time. And the Supreme Court – I'm entering into the dangerous area of speculation here. I'm sure the Supreme Court, given the proximity of these dates, was aware of Chun. But the – assuming he could go back to the California Supreme Court, and that there was – there is this avenue that excuses him from the general bar against successive petitions in California. And a change in the law would. Again, if he hasn't already raised – raised it. And without looking at the petition, just looking at the dates, I don't see how he could cite a decision that hadn't been rendered by the court at that point. But perhaps he noted that – and counsel may be able to clarify this. Yes. He went about – that's why it was after Chun was decided that this court save the proceedings. He went back. He invoked Chun. The petition was denied. Well, you know, you can tell us that when your time comes. Oh, I'm sorry, Your Honor. You're not supposed to interrupt. I'm sorry. I thought I asked. I thought my mic was set up. What? I apologize. Because we're not going to get it recorded, see? I apologize, Your Honor. I apologize, Your Honor, as well. And you know all these proceedings are on camera, you know. They're being streamed worldwide. So I apologize if there's confusion on those dates. I'm going off of the order that – or the Supreme Court docket that is in the Supplemental Act. I understand. I appreciate that. Thank you. He was convicted in 04, and the change occurred in 09. Correct. His case was prior to that. Do you think you can go back then, that five years, and get the Supreme Court to apply Chun retroactively? Is that your hope? That's another question. You'll be a good defense lawyer when you leave the prosecutor's office. That's another question. I think that he could perhaps get the issue before the Supreme Court. Whether the Supreme Court would find the Chun decision to be retroactive is another question. And I don't see anything in the Chun decision that suggests that that decision is, in fact, retroactive. Right. So this may be a situation, to get back to Judge Wynn's question, where California law evolved, California overruled prior cases, and he may not be able to get the benefit. Doesn't Chun indicate it was changing the law so that it was a different law than what applied when he was convicted? He overruled Robertson and Hansen, I believe. But I so I believe, to answer your question, he could get the issue before the Court. Whether he would get relief, I think, is unlikely, because there doesn't appear to be anything in the Chun decision to indicate that the Court would find it retroactive. Okay. Anything else? Unless the Court has any other questions, we would be prepared to submit. And I, again, apologize if I invited comment. No, that's all right. I didn't see it. I was looking at my notes. But I'll watch the film. Yeah, come on. I apologize for speaking out of turn. No, no, don't worry about it. I, were you clear on that he has, he's been, he's been there, and they've said no on the Chun case. He's been there. He's been to the Supreme Court, and they've said no. Okay. Does it Chun indicate that it was changing the law? It does. So that would mean that he wouldn't get the benefit of Chun. Right. It changed the whole merger doctrine. So the government didn't know that it had already been there. The Supreme Court had said no. It's the petitions in the record. The petitions in the record. The only point I would make regarding the factual point, everything, my colleague is perfectly correct that there's a presumption of correctness here. Absolutely. So all the factual determinations are entitled to that. Here, however, the issue's intent. And the gentlemen weren't in the car. They were out of the car. But Mr. Lozano thought they were in the car when he fired. And that's that. I can cite to the exception of record at page 188, there's a number of places where that, that evidence appears, where he testified that he, he admitted that he thought the car was occupied. Okay. Thank you. Thank you. That matter is submitted.
judges: Schroeder, Pregerson, Nguyen